Grafton
No. 82-161

NORTH BAY COUNCIL, INC., BOY SCOUTS OF AMERICA

v.

ELIZABETH C. GRINNELL & a.

May 9, 1983

*Gallagher, Callahan & Gartrell P.A.*, of Concord (*Donald E. Gartrell* on the brief and orally), for the plaintiff.

*Law Office of Laurence F. Gardner*, of Hanover, and *H. Bernard Waugh, Jr.*, of Lyme (*Mr. Waugh* on the brief and orally), for the defendants.

KING, C.J. The plaintiff, North Bay Council, Inc., Boy Scouts of America, brought a petition seeking a declaration of its rights in certain real estate in the towns of Orford and Piermont. It also sought injunctive relief, asking the superior court to enjoin the defendants from interfering with its sale of the property.

The controversy arises from language in a 1951 deed. In that year, William Morse Cole conveyed the property to Kaiora Camp, Inc., by a deed in which he attempted to retain for himself and his heirs or assigns a preemptive right. *See Emerson v. King*, 118 N.H. 684, 687, 394 A.2d 51, 53 (1978). The clause at issue provided:

> "[T]he Grantee and its successors herein shall not sell any part of the property herein conveyed until it shall have first offered it for purchase to the grantor, his heirs or

assigns, at the highest price at which they have received a bona fide offer."

Cole died in 1961. The following year, Kaiora Camp, Inc., sold the property to the plaintiff, North Bay Council, Inc., for $125,000, without first offering it to the defendants, Elizabeth C. Grinnell and Catriona Cole White, the heirs of William Morse Cole. Although the 1951 deed containing the preemptive right had been recorded, North Bay Council, Inc. had no actual knowledge of the preemptive right.

In 1979, the plaintiff entered into negotiations with Melville Enterprises, Inc. for the sale of the property, and Melville Enterpries, Inc. made an offer to buy the property. An attorney for Melville Enterprises, Inc. searched the title to the property, discovered the preemption clause in the 1951 deed, and indicated that the defendants' rights constituted a cloud on the plaintiff's title. The defendants first learned that they had a preemptive right from another attorney representing Melville Enterprises, Inc. At this time, the plaintiff offered to sell the property to the defendant Grinnell, but Grinnell did not accept the offer.

The plaintiff instituted this action in October 1980, seeking a declaration of its rights in the property and injunctive relief. The defendants filed a counterclaim, asking the court for specific performance of their preemptive right at the same consideration paid by the plaintiff in 1962, $125,000. The Master (*Thomas M. Pancoast,* Esq.) determined that the defendants had a valid present preemptive right to purchase the property by virtue of the 1951 deed from William Morse Cole to Kaiora Camp, Inc. He also ruled that, because of the rule against perpetuities, their preemptive right would become void twenty-one years after the death of William Morse Cole in 1961 unless the defendants exercised their right before that time. However, the master ruled that the defendants had no right to purchase the property for the same consideration paid by the plaintiff in 1962, because they were guilty of laches, and he recommended that the defendants' request for specific performance be denied. The Superior Court (*Johnson,* J.) approved the master's report, and the defendants appealed.

On appeal, the defendants raise three arguments. They contend that the master improperly applied the Rule Against Perpetuities as construed by this court. They also claim that the master's finding that they were guilty of laches is inconsistent with his specific finding that the defendant Grinnell had no actual knowledge of her preemptive right. The defendants also contend that this finding of laches was erroneous because the plaintiff has not been prejudiced

by their delay in exercising their right. We hold that the master correctly applied the Rule Against Perpetuities and the doctrine of laches, and we therefore affirm.

 The Rule Against Perpetuities provides that "no interest in property is good 'unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest.'" *Emerson v. King*, 118 N.H. at 687, 394 A.2d at 54 (citation omitted). Preemptive rights are subject to the Rule Against Perpetuities, *see id.* at 687, 394 A.2d at 53, and the interest is considered vested when the right is exercised. It is clear that if the Rule Against Perpetuities were applied strictly to the preemptive right at issue in this case, the right would violate the rule because exercise of the right is not limited to any time period. We indicated in *Merchants &c. Bank v. Curtis*, 98 N.H. 225, 229, 97 A.2d 207, 210 (1953), however, that the Rule has never been "remorselessly applied" in this State. Instead, we have been more concerned with carrying out the intent of the testator or grantor in any given case. *See Emerson v. King*, 118 N.H. at 687, 394 A.2d at 53; *Merchants &c. Bank v. Curtis*, 98 N.H. at 230, 97 A.2d at 211. Thus, in a previous case, we have shortened the time period stated in a devise so that it did not violate the Rule, in order to carry out the intent of a testator. *Edgerly v. Barker*, 66 N.H. 434, 475, 31 A. 900, 916 (1891).

 The defendants argue that while the master acted correctly when he limited the time period in which the preemptive right could be exercised so that it would not violate the Rule, he incorrectly calculated the time period during which the right must be exercised because the defendants were lives in being at the time of the deed. They contend that the interest should only become void twenty-one years after the last defendant dies. We disagree. Although the defendants were alive at the time of William Morse Cole's conveyance in 1951, they cannot be considered measuring lives for purposes of the Rule Against Perpetuities because at the time of the conveyance it could not be determined who William Morse Cole's heirs would be. *See* 2 H. TIFFANY, LAW OF REAL PROPERTY § 399, at 161 (3d ed. 1929). Because William Morse Cole was the only identifiable measuring life, we hold that the master correctly determined that the defendants' interest would become void twenty-one years after his death. ·

 The master's finding that the defendants were guilty of laches in seeking to enforce their preemptive right also was correct. The defendants contend that the finding was erroneous because the master specifically found that the defendant Grinnell had no actual

knowledge of her preemptive right, and such knowledge is essential for a finding of laches. Of course, she had constructive notice because of the recording of the deed in the registry. The defendants are correct that laches, as a general rule, cannot be imputed to a party who is ignorant of the facts creating his right. 30A C.J.S. *Equity* § 128, at 81 (1965). However, if a party's ignorance is due to his own negligence in failing to use ordinary diligence to investigate the pertinent facts, a finding of laches is proper. *Hathaway v. Noble*, 55 N.H. 508, 513 (1875).

Whether a party is guilty of laches is a question of fact for the trier of fact. *See Valhouli v. Coulouras*, 101 N.H. 320, 323, 142 A.2d 711, 713 (1958). We will not disturb the master's finding unless it is unsupported by the evidence or erroneous as a matter of law. *Campo v. Maloney*, 122 N.H. 162, 168, 442 A.2d 997, 1001 (1982). In this case, the master found that Grinnell had exercised a similar preemptive right which her father had reserved in another deed, and should have been aware that a similar right might exist as to the property at issue. Her failure to investigate to determine whether her father had retained any other preemptive rights, combined with record notice, justified the master's ruling that the defendant Grinnell was guilty of laches.

Finally, the defendants argue that the master's finding of laches was also improper because the plaintiff has not been prejudiced by the defendants' delay in enforcing their rights. The master specifically found that the value of the land in question had increased substantially since 1962, in part because of improvements made by the plaintiff. He concluded that for this reason it would be inequitable to grant the defendants specific performance of their preemptive right. *See* 2 J. POMEROY, TREATISE ON EQUITY JURISPRUDENCE § 419 d, at 179 (5th ed. 1941).

We find no error in the master's refusal to grant the equitable relief requested by the defendants.

*Affirmed.*

All concurred.